# EXHIBIT C-1

FILED
TARRANT COUNTY
8/31/2017 11:10 AM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. <u>236-294361-17</u>

| | | |
|---|---|---|
| SHEA RENAISSANCE, LLC, | § | IN THE DISTRICT COURTS OF |
| | § | |
| *Plaintiff,* | § | |
| v. | § | TARRANT COUNTY, TEXAS |
| | § | |
| PELEUS INSURANCE COMPANY | § | |
| | § | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF SHEA RENAISSANCE, LLC'S ORIGINAL PETITION

### TO THE HONORABLE DISTRICT COURT JUDGE:

Shea Renaissance, LLC ("Shea") hereby complains of Peleus Insurance Company ("Peleus"), and respectfully allege as follows:

### A.    DISCOVERY CONTROL PLAN

1.    Plaintiff intends that discovery be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure

### B.    PARTIES

2.    Shea Renaissance, LLC is a Delaware Corporation, authorized to conduct business in the state of Texas. Its principal office is located at 353 Jackson Street, Number U, Quincy, California 95971. Shea Renaissance does business as Renaissance Gardens and owns property at 2201 Ridgmar Boulevard, Fort Worth, Texas 76116.

3.    Peleus Insurance Company is listed on the Texas Department of Insurance's website as an eligible surplus lines entity organized under the laws of the Commonwealth of Virginia with its principal place of business at 8720 Stony Point Parkway, Suite 400, Richmond, Virginia 23235. It may be served with process by service through the Texas Commissioner

of Insurance, located at 333 Guadalupe, Austin, Texas 78701. At all relevant times, Peleus

had agents and/or conducted business in Tarrant County, Texas.

### C.   CLAIM FOR RELIEF

4.   Plaintiff seeks monetary relief over One Million Dollars ($1,000,000.00) in satisfaction of

Texas Rule of Civil Procedure 47(c)(5).

### D.   JURISDICTION AND VENUE

5.   The District Court has jurisdiction over this action because the amount in controversy

exceeds the minimum jurisdictional limits of the District Courts of Tarrant County, Texas.

6.   Venue is proper in Tarrant County under sections 15.002 and 15.005 of the Texas Civil

Practice & Remedies Code because: (1) all or a substantial portion of the events or

omissions giving rise to Plaintiff's causes of action occurred in Tarrant County, Texas, and

(2) all of Plaintiff's claims against Defendant arose out of the same transaction, occurrence,

or series of transactions or occurrences.

### E.   FACTUAL BACKGROUND

7.   Shea Renaissance is the owner of real property located in Tarrant County, Texas at 2201

Ridgmar Boulevard, Forth Worth, Texas. On this property sits a 160-unit apartment

complex known as Renaissance Garden Apartments.

8.   Shea Renaissance purchased the property in May 2015 from its previous owner MacDonald

Realty Group ("MRG"). Based on MRG's previous experience and knowledge of the

property, Shea Renaissance and MRG determined that it would make sense to have MRG

manage the property and handle the day-to-day tasks associated with a multi-family rental

property.

9.  Therefore, Shea Renaissance and MRG executed a property management agreement on May 22, 2015, for the apartment community known as Renaissance Garden Apartments (the "Agreement"). MRG was appointed as Shea Renaissance's agent to fulfill the purpose of the Agreement and operation of the property. The term of the Agreement consisted of automatically renewing one-year terms that commenced on May 22, 2015. The Agreement automatically renewed in 2016, but it was not renewed in May 2017.

10. Section 2.02 of the Agreement required MRG to operate and maintain the property and act in good faith on behalf of Shea Renaissance. It further required MRG to contract for property and liability insurance for the property at Shea Renaissance's expense and for Shea Renaissance's benefit. The Agreement obligated MRG to name Shea Renaissance, MRG, and Shea Renaissance's lender as insured parties or additional insured parties under the insurance policies as directed by Shea Renaissance's lender.

11. Additionally, the Agreement contained a separate article (Article V) which required MRG to administer for, and on behalf of Shea Renaissance, and at Shea Renaissance's expense, several different insurance policies, including real property and personal property casualty insurance, including business interruption insurance. This provision further required MRG to name Shea Renaissance and its lender as insureds or additional insureds under such policies.

12. Pursuant to the Agreement, MRG obtained a real property casualty insurance policy from Peleus, identified by master policy number 723-1426870415-00. The specific policy applicable to Shea's property was indicated by Peleus Policy number 9992 (the "Policy").

13. MRG paid Peleus the premiums under the Policy, but Shea Renaissance reimbursed MRG for each payment made. The Policy was obtained by MRG pursuant to the Agreement and

for Shea Renaissance's benefit. Therefore, Shea Renaissance is a beneficiary of Policy. The Policy is believed to be administered through Strata Underwriting Managers, and the policy language indicated it covered the subject property at 2201 Ridgmar Boulevard from October 31, 2015 to October 31, 2016. The Policy further purported to cover Shea's property from damage resulting from a "Covered Cause of Loss," which includes losses occurring as a result of damage caused by severe storms, including wind and hail.

14.     On or about March 17, 2016, severe storms with large hail severely damaged the Renaissance Gardens complex. Hail as large as 2.75", roughly the size of baseballs, was reported by spotters in the area. The Renaissance Garden apartment complex sustained severe damage to the buildings' roofs, gutters, HVAC units, carports, and more.

15.     On or about March 21, 2016, four days after this severe weather event, the insurer was provided notice of the claim. The claim was administered by Strata Underwriting Managers ("Strata") and assigned claim number 10679.

16.     Peleus, through Strata, hired Engle Martin & Associates, Inc. as a field adjuster, and later hired Unified Building Sciences, Inc. ("UBS") to act as a building consultant. UBS issued its report of findings on May 17, 2016, and came to the conclusion that Shea sustained damages to some buildings, but not to all, and that the amount of damages was far lower than determined by the contractor assessing the property for MRG and Shea.

17.     Unsatisfied with the disturbingly low estimate from Peleus and UBS, as well as Peleus' refusal to cover damages to some buildings even while agreeing hail damage occurred to others, Shea then hired public adjuster, Keys Claims Consultants, Inc., to inspect the property. In November 2016, Keys Claims and Peleus' adjusters and consultants inspected the property. After that inspection, Keys Claims issued an estimated amount of damages

sustained to be over $3 million. It also became apparent through inspection by the City of Fort Worth that Shea would be required to incorporate a slope to the roofs to comply with local code during its repair process. Peleus only agreed to pay a small portion of the total claim and failed to cover all damages suffered by Shea, which are provided for under the policy.

18. Shea, through MRG, indicated to Peleus that it was unsatisfied with Peleus' estimated cost of repairs and attempted to work through the differences in the estimates. Peleus then went and hired Rimkus Consulting Group ("Rimkus") and its engineer performed an inspection on or about December 6, 2016. Rimkus concluded that *none* of Shea's roofs sustained damage sufficient to require replacement.

19. Peleus, through Rimkus, further attempted to discount the size of hailstones that fell at Shea's property in order to justify its position that Shea's roofs were not damaged. In its report, Rimkus stated that the roofs did not exhibit hail damage or patterns typical of hail damage. However, weather data revealed hailstones up to the size of baseballs.

20. Upon information and belief, Peleus conspired with Rimkus to limit Shea's ability to recover proceeds rightfully due under the Policy, by providing a report that indicated that there was *no* damage to Shea's roofs that required replacement. Therefore, Peleus could position itself as having performed a "reasonable" inspection of Shea's property because it conducted two separate investigations, when in actuality, Rimkus was hired to merely perform a sham investigation and render a report with a cost of repairs even lower than Peleus' first repair estimate from UBS. Peleus could then rely on these two opinions from third parties as cover from any wrongdoing with respect to settling Shea's claim.

21.    Further expert analysis of the buildings Peleus claimed were not damaged by hail and wind in the storm, Buildings 1-7, confirmed hail and wind damage did occur to the extent such buildings require complete replacement of all roofing materials.

22.    Due to the unreasonable nature of the Peleus' settlement position, Shea has been unable to receive a fair and timely settlement of its claim and has been forced to incur several hundred thousand dollars in repairs it had to pay or will need to pay without reimbursement from its insurance carrier. Shea has also suffered business interruption damages due to Peleus' failure to timely pay. In addition, Shea's damages, which include amounts already incurred and paid without reimbursement and amounts for repairs yet to be completed, are estimated to exceed $3 million.

## F.    CAUSES OF ACTION

### COUNT 1 – BREACH OF INSURER'S DUTY OF GOOD FAITH AND FAIR DEALING

23.    Shea reasserts the allegations in the foregoing paragraphs and incorporates those paragraphs herein by reference.

24.    Shea, through MRG, purchased the Policy from Peleus. Premiums were paid to Peleus by MRG, with Shea reimbursing MRG for the policy premium payments. The policy was warranted to cover damage caused by, *inter alia*, wind and hail storms. Even though Peleus' initial adjusters and consultants indicated that damage existed, Peleus then hired Rimkus to draft reports that were mere pretext to support Peleus' position that the damage was significantly less than Shea claimed. However, on each roof inspected, Shea found significant damage caused by hail stones that is believed to be purposefully overlooked by Peleus and its adjusters and consultants.

25. By denying a reasonable settlement and further delaying payment when the damage was reasonably clear (to anyone who actually performed a competent inspection), Peleus has breached its duty.

26. Peleus' failure to provide reasonable payment to repair and/or replace damage sustained by Shea's buildings has proximately caused Shea's injury in that it must pay for its own repairs even though it purchased and diligently paid premiums for a policy to cover exactly the type of damage that has occurred.

COUNT 2 – UNFAIR INSURANCE PRACTICES

27. Shea reasserts the allegations in the foregoing paragraphs and incorporates those paragraphs herein by reference.

28. Shea, through MRG, entered into a valid insurance policy with Peleus to cover the subject properties. Shea is a beneficiary of the Policy because the Agreement with MRG required it to obtain insurance on Shea's property and to name Shea and its lender as an insured or additional insured. Further, Shea has an insurable interest in the property as its owner. Therefore, Shea and Peleus are proper parties as defined by Texas Insurance Code §541.002(2).

29. Peleus violated Texas Insurance Code section 541.060(a)(2)(A) by not attempting to bring about a prompt, fair and equitable settlement once its liability under the Policy became reasonably clear, as well as failing to conduct a reasonable investigation in violation of section 541.060(a)(7). Peleus failed to conduct a reasonable investigation of Shea's properties; cursory inspections were conducted solely to provide a basis to offer an unreasonable settlement amount. Shea provided damage estimates to Peleus, however,

Peleus relied upon a low estimate from UBS and the Rimkus report in an effort to resist paying a reasonable claim.

30.     These actions have caused Shea damages, in that, if Peleus had provided a fair, prompt, and equitable settlement, Shea would not be forced to repair the majority of its property at its own expense.  Nor would Shea be forced to bring this suit.

31.     Peleus, faced with a large insurance claim, acted knowingly to limit the total amount Shea could recover under the policy. It hired Rimkus to draft reports that were not the result of a reasonable inspection, but were instead, created with the sole purpose to reduce Peleus' potential exposure to the claim by any means necessary. These actions entitle Shea to recover up to three times the amount of actual damages.

<u>COUNT 3 – PROMPT PAYMENT OF CLAIMS</u>

32.     Shea reasserts the allegations in the foregoing paragraphs and incorporates those paragraphs herein by reference.

33.     This is a claim under the Peleus insurance policy for which Peleus received proper notice. Peleus is liable for the claim. Peleus has engaged in unfair claim settlement practices by not attempting to bring about a prompt, fair, and equitable settlement in good faith once its liability became reasonably clear. Peleus failed to adequately adjust Shea's claim within the reasonable time frames mandated by Chapter 542 of the Texas Insurance Code. Peleus' failures include: failure to acknowledge receipt of Shea's claim, commence investigation of the claim, or request from Shea or MRG all items, statements, and forms that it reasonably believed would be required within the applicable time constraints; failure to notify Shea or MRG in writing of its acceptance or rejection of the claim within applicable time constraints; or delay of the payment of Shea's claim following its receipt of all items,

statements, and forms reasonably requested and required, longer than the amount of time provided for. *See* TEX. INS. CODE §§ 542.055, 542.056, and 542.058. Peleus further hired Rimkus in order to limit any additional amount it would pay for Shea's damages, and thus delayed making payment, and has attempted to limit its liability on Shea's claim even though the damage was reasonably clear. Peleus has therefore breached its duty and violated Texas Insurance Code section 542.003.

34. Peleus' failure to work in good faith to settle Shea's claim has proximately caused Shea's injury and has required that Shea incur significant expenses to pay for damage that should have been covered under the Policy.

## COUNT 4 – BREACH OF CONTRACT

35. Shea reasserts the allegations in the foregoing paragraphs and incorporates those paragraphs herein by reference.

36. The Policy between Shea, through MRG, and Peleus purportedly provided coverage for Shea's property in the event of, *inter alia*, damage caused by severe weather such as wind and hail.

37. Shea performed its obligations under the contract and kept the Policy in force by timely paying premiums due, along with promptly notifying Peleus that a covered loss had occurred.

38. Peleus breached its obligations under the Policy by refusing to tender a prompt and reasonable settlement when its liability became clear and after receiving notice from Shea of damage, and instead launched an offensive campaign that included the tactics listed throughout this Petition meant to delay and frustrate any amicable resolution of Shea's claim.

39.   As a result of Peleus' breach, Shea has suffered injury that is a natural, probable and foreseeable consequence of said breach. Meaning, Shea is now forced to repair the damaged property on its own, even though the damage was caused as a result of a covered occurrence.

COUNT 5 – ATTORNEYS' FEES

40.   Shea reasserts the allegations in the foregoing paragraphs and incorporates those paragraphs herein by reference.

41.   As a result of Peleus' actions, Shea was forced to retain the undersigned counsel. Pursuant to section 38.001 of the Texas Civil Practice & Remedies Code, and section 541.152 of the Texas Insurance Code, Shea is entitled to, and hereby seeks to recover, its reasonable and necessary attorney's fees and costs. Shea hereby presents its claims to Peleus and requests judgment for its reasonable and necessary attorney's fees for prosecuting this matter and taking any appeal.

G.   CONDITIONS PRECEDENT

42.   All conditions precedent to Shea's right of recovery and attorney's fees has been performed or has occurred.

H.   JURY DEMAND

43.   Shea demands a jury trial and tenders the appropriate fees with this Petition.

I.   REQUEST FOR DISCLOSURE

44.   Under Texas Rule of Civil Procedure 194, Shea requests that Defendant disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## J.     PRAYER

Shea requests that this Court cite Peleus Insurance Company to answer and appear and, upon final trial of the merits, that Shea recover judgment against Peleus as follows:

(a)     actual damages;

(b)     consequential damages;

(c)     exemplary damages;

(d)     additional damages totaling three times the amount of actual damages (treble damages) for Peleus' knowing conduct in violating Texas Insurance Code Chapter 541;

(e)     reasonable attorney's fees and related costs;

(f)     pre-judgment and post-judgment interest as provided by law; and

(g)     such other and further relief, both at law and in equity, to which Shea is justly entitled.

Respectfully submitted,

McCathern, PLLC

*/s/ Levi. G. McCathern, II*
Levi G. McCathern, II
State Bar No. 00787990
lmccathern@mccathernlaw.com
Joseph E. Sampson
State Bar No. 24056260
jsampson@mccathernlaw.com
Brett M. Chisum
State Bar No. 24082816
bchisum@mccathernlaw.com
Regency Plaza
3710 Rawlins, Ste. 1600
Dallas, Texas 75219
(214) 741-2662 – Telephone
(214) 741-4717 – Facsimile

**ATTORNEYS FOR PLAINTIFF**